IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| ALL-SOUTH SUBCONTRACTORS, INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | CASE NO.: 1:14-CV-124 (WLS) |
| v. | : | |
| | : | |
| SUNBELT RENTALS, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Pending before the Court are Defendant Sunbelt Rentals, Inc.'s Motions for Judgment on the Pleadings and for Protective Order (Docs. 11 & 22), and Plaintiff All-South Subcontractors Inc.'s Motion to Remand (Doc. 26). For the reasons that follow, Plaintiff All-South Subcontractors Inc.'s Motion to Remand (Doc. 26) is **GRANTED,** and Defendant Sunbelt Rentals, Inc.'s Motion for Protective Order (Doc. 11) is **DENIED AS MOOT.** Having determined that the case should be remanded, the Court declines to consider the Motion for Judgment on the Pleadings (Doc. 11).

## DISCUSSION

This case is a putative class action filed by Plaintiff All-South Subcontractors, Inc. ("All-South"). (*See* Doc. 1-2.) The complaint, which was filed in the Superior Court of Dougherty County, Georgia, alleges breach of contract and related claims. (*See id.*) All-South is or was a customer of Defendant Sunbelt Rentals, Inc. ("Sunbelt"), a company that rents equipment and machinery to construction companies. (*Id.* at ¶ 1.) Sunbelt has two categories of customers: cash customers and credit customers. (*See* Doc. 30-1.) Cash customers sign a form contract with certain terms and conditions at issue in this case. (*Id.* at 2.) Credit customers are permitted to prepare, sign, and be bound by a contract prepared by the individual customers. (*Id.* at 2-3.) These contracts do not contain the terms and conditions

1

at issue in this suit. (*See id.*)  Credit customers with their own unique contractual terms are referred to as "Managed Accounts." (*Id.* at 3.)  Many, but not all, of Sunbelt's Managed Accounts also consent to the terms and conditions at issue in this case. (*Id.*)

All-South proposes two classes based primarily upon whether Sunbelt customers signed contracts containing certain terms and conditions.  The first class, the Refueling Class is defined by the complaint as follows:

> All individuals and entities who (1) entered into a contract to rent equipment from a Sunbelt Georgia location at any time from July 21, 2011 through the date of class notice which contains the following provision:
>
>> RENTAL RATES . . . Customer is responsible for . . . fuel used during the Rental Period (Customer may either return the Equipment fully fueled or a fuel charge shall be assessed to cover Sunbelt's direct and indirect costs of refueling the Equipment)) . . .
>
> and who (2) paid Sunbelt Rentals, Inc. for refueling under that contract.

(Doc. 1-2 at 4.)  All-South alleges that Sunbelt assessed customers subject to the referenced terms more than the amount of money necessary to cover its direct and indirect costs in violation of the contract. (*Id.* at 1.)  According to the complaint, "in September of 2013—when the on-highway price of diesel was approximately $3.90—Sunbelt charged All-South and its other Georgia customers $8.25 for diesel.  Sunbelt has no indirect fuel costs and the price it pays for fuel is less than half the price it charges customers." (*Id.* at 1-2.)

> The Transportation Fee Class is defined by the complaint as follows:
>
> All individuals and entities who (1) entered into a written contract to rent equipment from a Sunbelt Georgia location at any time from July 21, 2011 through the date of class notice which contains the following provision:
>
>> RENTAL RATES. . . Customer is responsible for . . . delivery and pickup costs to and from the store. . .
>
> and who (2) paid Sunbelt Rentals, Inc. a "delivery fee," "pickup fee," or "transportation surcharge" under that contract.

(*Id.* at 4.)   Allegedly, although the form contract limits what Sunbelt may charge customers for transportation of rented equipment to its " 'delivery and pickup costs to and from the store' . . . Sunbelt charges far more for transportation through [the] three [additional] fees [referenced above]."  (*Id.* at 2 (citations omitted).)   "For example, to transport two pieces of equipment less than five miles, Sunbelt charged All-South a $180 'delivery fee,' a $180 'pickup fee,' and a $34.20 'transportation surcharge' "; allegedly, those "charges bear absolutely no relationship to Sunbelt's actual costs of delivery and pickup" and are "hugely excessive."  (*Id.* at 2 & 12.)

The complaint was filed in Dougherty County Superior Court on July 21, 2014, and removed to this Court on August 22, 2014.  (Docs. 1 & 1-2.)  Sunbelt attached to its Notice of Removal a declaration by Kirby Miner, Sunbelt's Senior Vice President of Information Technology.  (Doc. 1-1.)  The Notice of Removal and Miner's declaration asserted that, during the relevant time period, more than 14,000 Sunbelt customers in Georgia paid refueling charges, totaling $5.8 million, and more than 21,000 Sunbelt customers in Georgia paid transportation fees, totaling more than $21 million.  (Docs. 1 at 4, 1-1 at 2-3.)  Sunbelt argues that, because $5.8 million was collected from the Refueling Class during the relevant time period and All-South alleged that Sunbelt pays "less than half the price it charges customers [for fuel,]" at least $2.9 million is in controversy as to the Refueling Class.  (Doc. 1 at 4.)  Sunbelt also stated that, as to the Transportation Fee Class, "hugely excessive . . . logically [means] more than 10%" of the $21 million customers paid in Sunbelt's Georgia locations during the relevant time period.  (*Id.* at 4-5.)

On November 21, 2014, the Court ordered the Parties to conduct limited jurisdictional discovery by deposing no more than three witnesses, propounding no more than ten interrogatories, and requesting no more than three admissions, all limited in scope to jurisdictional matters.  (*See* Doc. 21.)  After deposing Miner, All-South filed a Motion to Remand.  (Docs. 26 & 26-3.)  All-South therein identified five alleged flaws with Sunbelt's calculation of the amount in controversy:

(1)     The putative classes are expressly limited to customers who signed the form contract at issue, but Sunbelt's calculation is for all customers, including those who signed other contracts.

(2)     The putative classes are limited to the refueling charges, "pickup" fees, "delivery" fees, and "transportation surcharges" Sunbelt charged in connection with equipment rental, but Sunbelt's calculation includes a host of other fees not at issue.

(3)     All-South has challenged the fees at issue as excessive, but Sunbelt's calculation includes the total amount of the fee revenue, not the excessive portion alone.

(4)     Sunbelt's calculation is for "revenue recognized," while the class puts at issue the amount paid, and the two are not necessarily the same.

(5)     All-South has expressly excluded certain people from the class definition (including those people in bankruptcy), but Sunbelt has not accounted for this exclusion in its amount in controversy calculation.

(Doc. 26 at 8.)   In response, Sunbelt filed a second declaration in support of its Notice of Removal. (Doc. 30-1.)   Therein, Miner asserts that he made some adjustments to the calculation based on the alleged errors in the previous calculation as asserted by All-South. (*Id.* at 2-3.)   Miner first adjusted the calculation to reflect only the accounts paid in full; the transportation fees and refueling fees were thereby reduced to $20,443,308.97 and $4,070,688.22, respectively, for the relevant time period. (*Id.* at 5 & 7-8.)   Next, Miner found that "less than 33% of [Sunbelt's] total transportation revenue [was] from customers currently designated as Managed Accounts" and "less than 35% of [Sunbelt's] total refueling revenue [was] from customers currently designated as Managed Accounts." (*Id.* at 6 & 8.)   Miner found that the new amounts of transportation fees and refueling fees at issue are $13,697,017.01 and $2,645,947.34, respectively. (*Id.*)   The Court finds it appropriate to consider Sunbelt's second declaration to determine the amount in controversy. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1215 n.66 (11th Cir. 2007) (citing *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839-40 n.1 (9th Cir. 2002)) (noting that, although jurisdiction is analyzed as of the time of removal, evidence discovered after removal may be used to establish jurisdiction).

Miner's second declaration limits the calculation of the amount in controversy to the fees at issue in this case, the accounts paid in full, and individuals or entities who signed the

4

form contracts containing the terms and conditions at issue in this case.  As such, Sunbelt has corrected all alleged errors in its calculation of the amount in controversy except the issues listed at numerals three and five above.  The Court agrees with Sunbelt that it need not exclude persons in bankruptcy in calculating the amount in controversy.  While the Court cannot engage in impermissible speculation to determine the amount in controversy, *Lowery*, 483 F.3d at 1210-11, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).  The Parties do not seriously contend that the amount in controversy would be significantly affected by exempting the persons identified for exemption by the complaint.  As such, the Court finds that Sunbelt need not establish the reduction in the amount in controversy caused by the exemption of customers in bankruptcy.

Sunbelt argues that the entire portion of the referenced fees, $16,342,964.35, is in controversy.  (Doc. 30 at 14.)  All-South maintains that only the excessive portion of the challenged fees is at issue.  (Doc. 31 at 3.)  To support its position that the entirety of the Transportation Fees are in controversy, Sunbelt cites *Raskas v. Johnson & Johnson*, 719 F.3d 884 (8th Cir. 2013), *Lewis v. Verizon Commc'ns*, 627 F.3d 395 (9th Cir. 2010), *Spivey v. Vertrue, Inc.*, 528 F.3d 982 (7th Cir. 2008), and *Strawn v. AT&T Mobility, LLC,* 530 F.3d 293 (4th Cir. 2008).  In *Strawn*, the plaintiffs argued that, to fit the allegations in the complaint, the amount in controversy calculation should include only persons *unwillingly* enrolled in a particular program offered by the defendant rather than including all persons enrolled in that program. 530 F.3d at 298.  *Strawn* disagreed with the plaintiffs and held that the plaintiffs' complaint alleged that the wrong was the automatic enrollment, and that the complaint did not draw a distinction between individuals who were willingly enrolled and individuals who were not. *Id.* at 299.

In *Spivey*, the defendant calculated the amount in controversy to be over $5 million "because its billings, for 4 of the 22 programs in Illinois alone, came to almost $7 million." 528 F.3d at 985.  The putative plaintiffs were "a class of persons whose credit cards had been charged without authorization through 22 of [the defendant's] programs [in Illinois]." *Id.* at 983.  The district court found that the defendant's calculation was insufficient because

the defendant "did not concede that more than $5 million in charges was unauthorized." *Id.* at 985. The *Spivey* Court found that the defendant met its burden of establishing the amount in controversy with its declaration coupled with the plaintiffs' allegation that the defendant's practices were "common to all Class Members" and "a standard practice" of the company. *Id.* at 985-86. With the declaration and the referenced allegations, the Court found that the plaintiffs put into controversy all charges caused by the defendant. *See id.*

In *Lewis*, the plaintiffs argued that the amount in controversy calculation should include only charges for mobile telephone premium services that were not ordered, which the plaintiffs termed "unauthorized charges." 627 F.3d at 399. The defendant submitted an affidavit that stated that its total billings for all premium services exceeded $5 million. *Id.* The plaintiffs, however, did not "even argue[ ] that the claimed damages [were] less than the total billed." *Id.* at 400. As such, *Lewis* found that the defendant met its burden of establishing the amount in controversy by a preponderance of the evidence. *Id.*

In *Raskas*, the plaintiffs alleged that several pharmaceutical companies conspired to deceive customers into believing medications expired earlier than those medications in fact expired. 719 F.3d at 886. The plaintiffs argued that the defendants' calculation of the amount in controversy was overinclusive because it included all sales but the plaintiffs sought to recover damages related to a smaller portion of the sales. *Id.* at 887. The *Raskas* Court rejected the plaintiffs' argument and cited *Lewis* and *Spivey* as other cases that "rejected similar overinclusive arguments." *See id.* *Raskas* found that the total sales figures for the medications in question were sufficient to establish the amount in controversy because "the question 'is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are.' " *Id.* at 887 (citations omitted).

All of these cases are arguably distinct from the facts of this case. The *Strawn* Court disagreed with the plaintiffs' contention that the amount in controversy calculation did not match the allegations in the complaint. The *Spivey* Court found that the allegation that the defendants' practices were so prevalent of a practice within the company, and the sales numbers in Illinois were so significant, made it more likely than not that the amount in controversy was met. The *Lewis* plaintiffs waived their argument that the claimed damages were

less than the total amount billed by the defendants.  The *Raskas* Court involved allegations that the Court construed as putting the defendants' entire sales figures as to certain products in controversy and the plaintiffs failed to rebut that hypothesis.  None of those cases specifically addressed situations where the amount in controversy calculation does not attempt to conform to the specific, unambiguous allegations in the complaint.

Even if the referenced cases from other Circuits are on point to the issue in this case, the Court finds that *Thomas v. Bank of Am. Corp.*, 570 F.3d 1280 (11th Cir. 2009), is dispositive in this matter and binding on this Court.  In *Thomas*, the plaintiffs sought the recovery of "all premiums collected by [Bank of America] from Plaintiff and the class members . . . for various insurance products for which Plaintiff and the class members were ineligible to receive benefits thereunder."  *Id.* at 1281.  The complaint contained no information about the amount in controversy.  *Id.* at 1282.  The defendant's declaration provided the total amount of fees collected in Georgia during the relevant time period.  *Id.*  United States District Judge Clay D. Land found that the declaration was insufficient to establish the amount in controversy by a preponderance of the evidence.  Specifically, Judge Land found the declaration "too broad" because "[the plaintiff did] not contend that all Georgia . . . customers [who purchased the referenced insurance were] entitled to relief."  *Thomas v. Bank of Am. Corp.*, No. 3:08-cv-68, 2009 WL 88450, *3 (M.D. Ga. Jan. 12, 2009).  The United States Court of Appeals for the Eleventh Circuit affirmed Judge Land's ruling because "the complaint provided no information indicating the amount in controversy [and the] defendant ha[d] not shown the amount in controversy . . . by a preponderance of the evidence."  *Thomas*, 570 F.3d at 1283.

In the cases cited above, other Circuits have arguably intimated a concern that requiring notices of removal and accompanying declarations to match the complaint would demand a standard of proof above preponderance of the evidence or require the defendant to admit wrongdoing.  The Eleventh Circuit has stated a similar concern regarding the preponderance standard in the amount of controversy calculation.  In *Lowery*, the removing defendant sought to remove a case without providing any evidence of the amount in controversy and the complaint did not provide a sufficient basis to determine that amount.  "[T]he ques-

tion [in *Lowery*] was how to apply the preponderance of the evidence standard in the 'fact-free context' " where "facts or specific allegations" are lacking and "the amount in controversy could be 'divined [only] by looking at the stars' " *See Pretka*, 608 F.3d at 753-54. *Lowery* found that, in such situations, the removing defendant must come forward with some evidence of the amount in controversy. Later, in *Pretka*, the Eleventh Circuit cautioned district courts against requiring proof from a removing defendant that essentially exceeded the preponderance standard. That case stated that "[a] different question is presented [from the question presented in *Lowery*] . . . when a removing defendant makes specific factual allegations establishing jurisdiction and can support them . . . with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Pretka*, 608 F.3d at 754.

In a footnote, *Pretka* addressed the holding in *Thomas*. *See id.* at 761 n.19. The Court stated that "*Thomas* stands for the basic proposition that a fundamentally flawed declaration, in combination with a complaint providing 'no information' on the amount in controversy cannot establish jurisdiction by a preponderance of the evidence." *Id.* The rule articulated by *Thomas* and *Pretka* appears to be that a removing defendant cannot establish the amount in controversy by a preponderance of the evidence if the complaint provides "no information" on the amount in controversy and the removing defendant's declaration is "fundamentally flawed." *See id.* "[A] declaration [that does] not fit the allegations in the complaint" is "fundamentally flawed." *Id.* The Parties essentially agree that Sunbelt's declarations do not fit the allegations in the complaint. As such, the Court finds that the declaration is "fundamentally flawed" as that phrase is defined by the cases discussed above. Therefore, the Court must address whether the complaint contains "no information" on the amount in controversy.

The complaint in *Thomas* alleged that putative class members included only persons who purchased a particular insurance product and were not employed more than 30 hours per week during the relevant time period. Employment for more than 30 hours per week was a condition precedent to eligibility for benefits under the referenced insurance product. Each putative class member was allegedly entitled to recover seventy cents for each $100-

per-month premium purchased for every month the person paid such premium and was ineligible for the benefits of the insurance product. *See* Complaint, *Thomas v. Bank of Am. Corp.*, No. 3:08-cv-68 (M.D. Ga. July 30, 2008), ECF No. 1-2. Similar to this case, the complaint did not allege a specific number of putative class members.

If the complaint in *Thomas* contains "no information" regarding the amount in controversy, the complaint in this case certainly contains "no information" regarding the amount in controversy. The *Thomas* complaint provided a calculation of how to determine the amount of damages for each putative class member. The complaint in this action does not do so, and cannot do so, because All-South does not know Sunbelt's direct or indirect transportation costs. As such, the Court finds that All-South's complaint contains "no information" regarding the amount in controversy. Because the declarations are fundamentally flawed, the Court is required to find that Sunbelt did not meet its burden of demonstrating the amount in controversy by a preponderance of the evidence.[1]

While the Court understands the concern that the rule the Court discerned from *Thomas* and *Pretka* arguably demands more proof than what is required by the preponderance of the evidence standard, the Court emphasizes its duty to follow Eleventh Circuit precedent. *See Jaffree v. Wallace*, 705 F.2d 1526, 1532-33 (11th Cir. 1983). Further, the Class Action Fairness Act's plain language requires $5 million to be "in controversy." *See* 28 U.S.C. § 1332(d)(2). All-South's complaint explicitly alleges that Sunbelt's transportation fees charged to customers are only in breach of contract to the extent such charges exceed Sunbelt's actual costs to transport rental equipment.

The Court notes that Sunbelt argued that the Court can infer that the amount in controversy requirement is satisfied because All-South alleged that the transportation fees charged to customers were "hugely excessive" when compared to Sunbelt's actual transpor-

---

[1] The Court is of the opinion that, in the Eleventh Circuit, where fees are challenged as excessive but not wholly unauthorized, the removing party must do something more than provide information regarding the amount of money collected as to the entire portion of the fees. Here, Sunbelt's declarations state the amount collected as to the entire fee and do not attempt to identify the amount of the excessive portion of those fees without speculation. At best, whether the amount in controversy requirement is satisfied is doubtful. Because "all doubts about jurisdiction should be resolved in favor of remand to state court," *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999), the Court finds that this matter should be remanded to the state court from whence it came.

tation costs. (*See* Doc. 29 at 7-8.)  The Court disagrees.  To satisfy the amount in controversy requirement, assuming \$2,645,947.34[2] is in controversy as to the refueling fees, more than \$2,354,052.66 in transportation fees must be challenged as excessive.  Of the total \$16,342,964.35 in transportation fees collected during the relevant period, \$2 million could just as easily be "hugely excessive" as could \$8 million.  If only \$2 million is the amount in controversy as to the transportation fees, the Court would not have subject matter jurisdiction over this case.  All doubts regarding jurisdictional matters should be resolved in favor of remand.  *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).  As such, the Court cannot say that \$2,354,052.66 in transportation fees are more likely than not placed into controversy by the complaint's allegation that the transportation fees were "hugely excessive."

Further, the Court notes Sunbelt's evasive tactics during jurisdictional discovery. Sunbelt's Motion for Protective Order seeks to avoid answering All-South's interrogatory which states as follows:

> INTERROGATORY NO. 3: Please state—for each Sunbelt Georgia location and for the United States—the amount of cost related to each of the Fees each month.  For example, for the refueling charges, please identify all fuel costs (both direct and indirect) which Sunbelt incurred through refueling for each Sunbelt Georgia location and the United States by month.

(Doc. 22 at 6.)  Sunbelt alleges that the referenced interrogatory sought to delve into information outside of the scope of the limited jurisdictional discovery, imposed an undue burden on Sunbelt, and erred by seeking information related to Sunbelt locations outside of Georgia. (*See id.* at 6-7.)  The interrogatory, however, sought information directly related to whether this Court has jurisdiction under *Thomas* and *Pretka*.  Also, Sunbelt had the option of specifying relevant records and permitting All-South to inspect those records to determine the cost information.  *See* Fed. R. Civ. P. 33(d).  Sunbelt chose not to do so.  On the record before the Court, it appears as though Sunbelt had the information available to it to establish the amount in controversy by a preponderance of the evidence.  To save itself from an undue burden, Sunbelt could have provided the relevant information to All-South.  Sunbelt chose

---

[2] This figure represents one-half of the total refueling charges paid in full by Sunbelt Georgia customers during the relevant time period.

not to do so and instead presumed its declarations were sufficient.  For the reasons stated above, Sunbelt's presumption was incorrect.

## CONCLUSION

For the reasons stated above, Plaintiff All-South Subcontractors Inc.'s Motion to Remand (Doc. 26) is **GRANTED,** and Defendant Sunbelt Rentals, Inc.'s Motion for Protective Order (Doc. 22) is **DENIED AS MOOT.**  Having determined that the case should be remanded, the Court declines to address the Motion for Judgment on the Pleadings (Doc. 11).  This matter is hereby **REMANDED** to the Superior Court of Dougherty County, Georgia.

**SO ORDERED**, this  14th  day of July 2015.


/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**